FILED IN CHAMBERS
U.S.D.C Atlanta

SEP 27 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ROME DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| v. | : | |
| MARK MASON ALEXANDER<br>   also known as<br>   MUSA MAHMOOD AHMED, and<br>ALI SHOJAIE, and<br>KARIM BABAKHANI | : | NO. 4:11-CR-036-HLM |

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

1. At all times relevant to this Indictment, defendant MARK MASON ALEXANDER ("ALEXANDER"), also known as Musa Mahmood Ahmed, was a resident of Dalton, Georgia. Defendant ALEXANDER owned 55% of Hydrajet Technology, LLC ("Hydrajet Technology") and was the company's Chief Operating Officer. Defendant ALEXANDER supervised the daily operations of the company, including supervising the sales staff for both Hydrajet Technology and Hydrajet Mena, which was a company established in Dubai, United Arab Emirates, by the partners of Hydrajet Technology for the purpose of facilitating the sale and distribution of the waterjet cutting machines in the Middle East.

2. At all times relevant to this Indictment, Hydrajet Technology, also known as Hydrajet-USA and which was located in Dalton, Georgia, manufactured waterjet cutting machines. The machines are used for the precision cutting of materials to include aluminum, glass and steel. The machines retail for a price ranging from approximately $150,000 to $180,000. The business practice of Hydrajet Technology is not to maintain an inventory but to build each machine to order and after receiving partial payment. It takes approximately three to four weeks to manufacture one waterjet cutting machine. Solicited orders are submitted to Hydrajet Technology, which would manufacture the machine according to the customer's order. After the machines are manufactured, they are distributed through Hydrajet Mena to the parts of the Middle East where the customers are located.

3. At all times relevant to this Indictment, ALI SHOJAIE ("SHOJAIE") was the Managing Director for Parsiyan Pardis, an import and export trading company located in Tehran, Iran.

4. At all times relevant to this Indictment, KARIM BABAKHANI ("BABAKHANI") was a representative for Parand Machine Company, an engineering and trading company located in Tehran, Iran.

## The Iran Trade Embargo and the Iranian Transactions Regulations

5. At all times relevant to this Indictment, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 - 1706, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declared a national emergency with respect to that threat.

6. On March 15, 1995, the President issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957, as expanded and continued by Executive Orders Nos. 12959 and 13059, was in effect at all times relevant to this Indictment.

7. Executive Orders Nos. 12959 and 13059 (collectively, with Executive Order No. 12957, "Executive Orders") imposed economic sanctions, including a trade embargo, on Iran. The Executive Orders prohibited, among other things, the exportation, sale, or supply, directly or indirectly, to Iran of any goods,

technology, or services from the United States or by a United States person. The Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Executive Orders.

8. The Executive Orders authorized the United States Secretary of the Treasury, in consultation with the United States Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations, 31 C.F.R. Part 560, implementing the sanctions imposed by the Executive Orders.

9. The Iranian Transactions Regulations prohibited, among other things, the export, sale, or supply, directly or indirectly, of any goods, technology, or services from the United States or by a United States person, wherever located, to Iran or the Government of Iran, without prior authorization or license from the United States Department of the Treasury, through the Office of Foreign Assets Control. These regulations further prohibited any transactions that evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in the Iranian Transactions Regulations, including the

4

unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.

10. The Executive Orders and the Iranian Transactions Regulations were in effect at all times relevant to this Indictment.

11. Therefore, Hydrajet Waterjet Cutting Systems cannot be exported directly or indirectly to the Republic of Iran without first obtaining a license to export or authorization from the Office of Foreign Assets Control.

12. At no time did the defendant, MARK MASON ALEXANDER, also known as Musa Mahmood Ahmed, Hydrajet Technology, Hydrajet Mena, ALI SHOJAIE, and KARIM BABAKHANI apply for, receive, or possess a license or authorization from the Office of Foreign Assets Control to export goods, technology, or services, of any description, to the Republic of Iran.

## COUNT ONE

Paragraphs 1 through 12 are hereby re-alleged and incorporated as though fully stated herein.

### The Conspiracy

From on or about October 2006, continuing through on or about June 2008, in the Northern District of Georgia, and elsewhere, the defendant, MARK MASON ALEXANDER, also known as Musa Mahmood Ahmed, ALI SHOJAIE, and KARIM BABAKHANI, with others

5

known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree to knowingly and willfully export waterjet cutting systems from the United States to the Republic of Iran, a prohibited country, without first having obtained a license for such export or written authorization for such export from the U.S. Department of the Treasury's Office of Foreign Assets Control, in violation of the International Emergency Economic Powers Act, Title 50, United States Code, Section § 1705, in connection with Title 31, Code of Federal Regulations, Sections 560.203 and 560.204.

## The Manner and Means

The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

a. Defendant ALEXANDER and employees from Hydrajet Mena received from defendants SHOJAIE and BABAKHANI, the Iranian dealers, requests for Proforma Invoices, which were requests for price quotes for the purchase of Hydrajet-USA Waterjet Cutting Systems;

b. Defendant ALEXANDER participated in setting the prices quoted in the Proforma Invoices and directed employees at Hydrajet Mena to prepare the Proforma Invoices, which they subsequently sent to persons and entities in the Republic of Iran;

c. Defendants SHOJAIE and BABAKHANI delivered the Proforma Invoices to potential Iranian customers.

d. Defendant ALEXANDER authorized the shipment of waterjet cutting machines from the United States to the Republic of Iran, via Dubai, United Arab Emirates.

e. Defendant ALEXANDER caused Hydrajet-USA Waterjet Cutting Systems to be sold to entities in Iran without obtaining a license from the Office of Foreign Assets Control, United States Department of Treasury.

### Overt Acts

To further the objectives of the conspiracy, and to accomplish its goals, the following overt acts, among others, were committed in the Northern District of Georgia and elsewhere:

a. On or about October 19, 2006, in response to an email regarding pricing from defendant Ali SHOJAIE, an Iranian person representing Parsiyan Pardis located in Tehran, Iran, defendant ALEXANDER advised an employee at Hydrajet Mena to "be reasonable" with the price quoted for the first system to Iran and Mena for 2006. Defendant ALEXANDER additionally provided the prices for the employee at Hydrajet Mena to quote and he advised the employee to have defendant SHOJAIE to add his reasonable commission. Defendant ALEXANDER further advised that any changes in prices, payment terms or the addition of other options

requires prior consultation with defendant ALEXANDER.

b.  On or about October 19, 2006, defendant ALEXANDER sent another email to certain employees of Hydrajet Technology and Hydrajet Mena in which defendant ALEXANDER advised that defendant SHOJAIE was an Iranian dealer and that this was just for their information.  Defendant ALEXANDER in the same email directed an employee at Hydrajet Mena to "reply to Ali [SHOJAIE] in Iran."

c.  On or about November 19, 2006, in response to an email sent to defendant ALEXANDER from defendant SHOJAIE advising that Iranian companies were serious about buying the machines and that they needed answers to technical questions, defendant ALEXANDER replied that defendant ALEXANDER could send the Middle East Manager to Iran, or the dealer could meet Hydrajet employees in Dubai in order to obtain service and technical support.

d.  On or about February 23, 2007, defendant ALEXANDER sent an email to defendant SHOJAIE in which defendant ALEXANDER advised that technical and business support for Iran would come from the Dubai office.  Defendant ALEXANDER further approved that the port of delivery for sales through defendant SHOJAIE's company would be Bandar Abbas (this is a port city located in the Republic of Iran).  Defendant ALEXANDER further advised Defendant SHOJAIE and defendant SHOJAIE's colleague to keep in contact with Defendant ALEXANDER for any further information.

e. On or about March 8, 2007, a colleague of defendant SHOJAIE sent an email to Hydrajet Mena and carbon copied defendant ALEXANDER, in which the colleague asked for catalogs and wood samples. On this same date, defendant ALEXANDER directed an employee at Hydrajet Mena to "act and support" as requested.

f. On or about March 15, 2007, defendant ALEXANDER received an email requesting a Proforma Invoice. The email further advised that the delivery conditions should be "C&F Bandar Abbas, Iran," and that the certificate for the machine should not be issued in the USA, but that it should be issued in the U.A.E. or somewhere else.

g. On or about March 15, 2007, defendant ALEXANDER replied that an employee at Hydrajet Mena would send the Proforma Invoice. Defendant ALEXANDER further provided the price for the machine and confirmed that the delivery location will be Bandar Abbas Port.

h. On or about March 19, 2007, defendant SHOJAIE sent an email to an employee at Hydrajet Mena in which defendant SHOJAIE specifically requested that Hydrajet Mena prepare a Proforma Invoice on behalf of Mr. Bostani, Iran Ghodrat Company.

i. On or about March 28, 2007, and after receiving a Proforma Invoice, defendant SHOJAIE's associate sent an email to

9

an employee at Hydrajet Mena requesting, in part, that the Proforma Invoice list "C&F Bandar Abbas." Defendant ALEXANDER was copied on this email.

j. On or about April 2, 2007, defendant ALEXANDER agreed to the delivery terms requested on March 28, 2007 (see paragraph i). Defendant ALEXANDER further advised that an employee at Hydrajet Mena was assigned to make the changes requested and that the employee would forward another Proforma Invoice.

k. On or about, April 19, 2007, an employee at Hydrajet Mena sent an email to defendant SHOJAIE in which the employee requested the name and an account number for a courier in Iran in order to send certain items requested by defendant SHOJAIE and his colleague. The employee further advised defendant SHOJAIE that the employee would have to speak to defendant ALEXANDER regarding defendant's SHOJAIE's request to be able to issue Proforma Invoices in Iran.

l. On or about May 15, 2007, an employee at Hydrajet Mena prepared a Proforma Invoice for Negin Sanat Sadr, also known as Negin Steel Company, which was located in the Republic of Iran.

m. On or about July 27, 2007, Hydrajet Technology shipped from Dalton, Georgia, to a freight forwarder one Waterjet Cutting System, bearing serial number MHO 845 and with the company "Hydrajet Mena (Karim)" listed on the Hydrajet Technology

Shipping Check List.

n. On or about August 4, 2007, the Hydrajet Waterjet Cutting System bearing serial number MHO 845 was shipped from the United States to Hydrajet Mena, Dubai, U.A.E.

o. On or about August 17, 2007, Hydrajet Technology shipped from Dalton, Georgia, to a freight forwarder one Hydrajet Cutting System bearing serial number MHO 846 and with the company HJ-Mena listed on the Hydrajet Technology Shipping Check List.

p. On or about August 21, 2007, the Hydrajet Waterjet Cutting System bearing serial number MHO 846 was shipped to Hydrajet Mena, Dubai, U.A.E., from the United States.

q. On or about August 26, 2007, Hydrajet Mena prepared a Commercial Invoice and a Packing List for one Hydrajet Waterjet Cutting System, with the listed country of origin as U.S.A., and the listed Port of Discharge as Bandar Abbas, Persian Gulf, Islamic Rep. of Iran. The listed customer was Parand Machine Co., located in Tehran, Iran.

r. On or about October 21, 2007, Hydrajet Mena prepared a Commercial Invoice and a Packing List for one Hydrajet Waterjet Cutting System, with the listed country of origin as U.S.A., and the listed Port of Discharge as Bandar Abbas, Persian Gulf, Islamic Rep. of Iran. The listed customer was Negin Sanat Sadr Co., located in Tehran, Iran.

s.  On or about April 12, 2008, defendant BABAKHANI requested that travel arrangements be made for the first week in May 2008 for the installation of the waterjet cutting systems at Negin Steel and at Parand Machine Company (both located in Iran).

t.  On or about May 15, 2008, an employee at Hydrajet Mena advised defendant BABAKHANI that the employee would travel to Iran the following week (the week of May 22, 2008) to complete the installation of the machines.

u.  On or about May 22, 2008, defendant BABAKHANI sent an email in which he apologized for the installation cancellation and he advised that Negin Steel would have everything ready by May 30, 2008. Defendant BABAKHANI then requested that travel to Tehran, Iran, by a Hydrajet employee be scheduled after this date.

v.  On or about June 6, 2008, an employee from Hydrajet Mena installed a waterjet cutting machine at Parand Machines in Tehran, Iran.

w.  On or about June 8, 2008, an employee from Hydrajet Mena installed a waterjet cutting machine at Negin Sanat Sadr in Tehran, Iran.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE PROVISION

Upon conviction of the offenses alleged in Count One of this Indictment, the defendants, MARK MASON ALEXANDER, also known as Musa Mahmood Ahmed, ALI SHOJAIE, and KARIM BABAKHANI, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violation, including but not limited to the following:

 (a) A sum of money in United States currency equal to the amount of proceeds the defendants obtained as a result of the offenses for which the defendants are convicted.

If, as a result of any act or omission of any defendant, any property subject to forfeiture:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third person;

 c. has been placed beyond the jurisdiction of the Court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18 United States

Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A \_\_\_\_\_TRUE\_\_\_\_\_ BILL

\_\_\_\_\_/s/ Vernetta Hall\_\_\_\_\_
FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

/s/ Tracia M. King
TRACIA M. KING
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 421380

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6305